**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMBERATEK LLC, <br><br> Plaintiff, <br><br> v. <br><br> KYOCERA CORPORATION, <br><br> Defendant. | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff ImberaTek LLC ("ImberaTek") brings this action against Defendant Kyocera Corporation ( "Defendant" or "Kyocera") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for patent infringement (hereinafter the "Action"), brought under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief arising out of Defendant's infringement of United States Patent Nos. 7,609,527 (the "527 Patent"), 8,222,723 (the "723 Patent"), 8,487,194 (the "194 Patent"), and 9,107,324 (the "324 Patent") (collectively, the "Asserted Patents").

2.      ImberaTek owns the entire right, title, and interest in and to each of the Asserted Patents.

3.      Defendant has infringed each Asserted Patent by, without ImberaTek's authorization, making, using, offering to sell, and selling in, and/or importing into the United States products including certain semiconductor technology. Further, Defendant has indirectly infringed each Asserted Patent by, without ImberaTek's authorization, making, selling, and supporting

products including certain semiconductor technology knowing that the same will be imported into, sold, and used in the United States and cause direct infringement.

## THE PARTIES

4.      Plaintiff ImberaTek is a Texas corporation with an address at 14205 North Mopac Expressway, 5th Floor, Austin, TX, 78728.

5.      On information and belief, Defendant Kyocera Corporation ("Kyocera Corp.") is a corporation organized and operating under the laws of the country of Japan with its principal place of business at 6 Takeda Tobadono-cho, Fushimi-ku, Kyoto, Japan. Kyocera Corp. manufactures, sells and/or offers for sale in the United States and imports into the United States, mobile telephones for use in a mobile communications network. In addition, Kyocera Corp.'s mobile telephones are marketed, offered for sale, and/or sold throughout the United States, including within this District. Upon information and belief, and by way of example but not limitation, publicly available bill of lading information confirms that Kyocera Corp. imports, and has in the past imported, into the United States Kyocera-branded products including at least mobile phones.[1]

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over ImberaTek's claims of infringement of the Asserted Patents pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (action arising under an Act of Congress relating to patents), 2201 (creation of remedy), and 2202 (further relief). Certain claims in this Action arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

7.      This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas and has committed and continues to commit

---

[1] *See*, *e.g.,* Ex. 5 (short form bills of lading showing representative examples of Kyocera Corp.'s importation into the United States of mobile phones).

acts of patent infringement in the United States, including in the State of Texas, by making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas. In addition, Defendant conducts its business extensively throughout Texas, and derives substantial revenue in Texas, by shipping, distributing, offering for sale, selling, and advertising (including through an interactive web page) its products and/or services in the State of Texas and this District. Defendant has purposefully and voluntarily placed in the stream of commerce one or more products and/or services that infringe the Asserted Patents (as set forth below) with the intention and expectation that they will be imported into, and purchased and used by consumers in, the Eastern District of Texas. For example, Defendant advertises its products (including those accused in this Complaint) for purchase on its webpage, accessible from the United States, including Texas, such as at https://www.kyoceramobile.com/available-devices.

8.      Defendant also advertises on its website that certain of its mobile phone products are available for purchase from Verizon and U.S. Cellular.[2] On information and belief, Defendant further sells its mobile phone products through Walmart.[3]

9.      On information and belief, Defendant's products accused in this Complaint are and have been sold in physical Verizon and Walmart retail stores located within the State of Texas and the Eastern District of Texas. By way of example but not limitation, there is an authorized Verizon retailer located at 1006 E. End Blvd. N., Marshall, TX 75670, and there are Verizon company

---

[2] *See* https://www.kyoceramobile.com/available-devices.

[3] *See* https://www.walmart.com/ip/Kyocera-DuraForce-Ultra-5G-UW-smartphone-RAM-6-GB-Internal-Memory-128-microSD-slot-LCD-display-5-45-24-MP-16-MP-front-camera-8-Verizon-black/993256632?wmlspartner=wlpa&selectedSellerId=5570&selectedOfferId=EB0B89BB4A684978B0799F09A83D4493&conditionGroupCode=1.

stores located at 3904 Saint Michael Drive, Texarkana, TX 75503, 1016 W. Southwest Loop 323, Tyler, TX 75701, and 8988 S. Broadway Avenue, Tyler, TX 75703. Further, there are Walmart Supercenters located at 1701E. End Blvd. N., Marshall, TX 75670, 4000 New Boston Road, Texarkana, TX 75501, and 6801 S. Broadway Avenue, Tyler, TX 75703.

10.     Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of their past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

11.     In addition, or in the alternative, this Court has personal jurisdiction over Defendant Kyocera Corp. pursuant to Fed. R. Civ. P. 4(k)(2).

12.     Venue is proper in this district as to Defendant Kyocera Corp., which is organized under the laws of Japan. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

### FACTUAL ALLEGATIONS

#### A.     Background

13.     This lawsuit involves significant, groundbreaking advancements in the manufacturing of semiconductor devices. These innovations were developed by Imbera Electronics Oy, a pioneering Finnish company which started to develop embedded electronics packaging technology and manufacturing solutions decades ago. Over the years, these innovations have enabled significant advancements in the field.

14.     The Asserted Patents are generally directed to novel and non-obvious techniques to leverage semiconductors in electronic modules such as printed circuit boards and package substrates. The inventions of the Asserted Patents provide technical, manufacturing, and economical advantages by, for example, designing an electronic module with solid bump contact zones to improve a conductive-pattern layer (527 Patent at 3:8-5:53), manufacturing an electric module with conductive pattern layers (723 Patent at 2:56-5:10), and manufacturing components with specific contact surfaces (324 Patent at 3:10-4:41, 194 Patent at 1:48-2:56).

**B.     The Asserted Patents**

15.     The 527 Patent is titled "Electronic Module" and issued on October 27, 2009. The named inventors on the 527 Patent are Risto Tuominen and Petteri Palm. A true and correct copy of the 527 Patent is attached hereto as Exhibit 1.

16.     The 723 Patent is titled "Electronic Module Having A Conductive Pattern Layer" and issued on July 17, 2012. The named inventors on the 723 Patent are Risto Tuominen and Petteri Palm. A true and correct copy of the 723 Patent is attached hereto as Exhibit 2.

17.     The 194 Patent is titled "Circuit Board Including An Embedded Component" and issued on July 16, 2013. The named inventors on the 194 Patent are Risto Tuominen and Petteri Palm. A true and correct copy of the 194 Patent is attached hereto as Exhibit 3.

18.     The 324 Patent is titled "Circuit Module and Method of Manufacturing the Same" and issued on August 11, 2015. The named inventors on the 324 Patent are Petteri Palm, Risto Tuominen, and Antti Iihola. A true and correct copy of the 324 Patent is attached hereto as Exhibit 4.

**C.      The Accused Products and Infringing Activities**

19.      ImberaTek is the owner of all rights, title, and interest in and to the Asserted Patents. ImberaTek possesses all rights to sue and recover past and future damages for any infringement of the Asserted Patents.

20.      On information and belief, Defendant offers or has offered multiple infringing mobile phone products, including but not limited to the DuraSport 5G UW, DuraForce Ultra 5G UW, and DuraForce Pro 3 5G mobile phones (the "Accused Products"), which, on information and belief, include, without limitation, at least one of the following infringing components: the PM6150L, PM7150L, PM6350, PM7250, PM7250B, and PM7350C Power Management Integrated Circuits ("PMIC") and the SM4350 and SM7450 Application Processors ("AP"). (*See* Exhibits 8-33.) On information and belief, each of the PM6150L, PM6350, PM7150L, PM7250B, PM7250, and PM7350C PMICs and the SM4350 and SM7450 APs as used in an Accused Product infringes the 194 Patent, and each of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs, as used in an Accused Product infringes each of the 723 Patent, the 527 Patent, and the 324 Patent.

21.      For example and without limitation of the foregoing, and on information and belief, the PM7250B, PM6150L, and PM6350 PMICs and the SM4350 AP are used in the DuraSport 5G UW. On information and belief, Defendant began offering the DuraSport 5G UW for sale in the United States in 2021[4] and has been, and is currently, selling, and supporting the use of, the DuraSport 5G UW in the United States.[5]

---

[4] https://americas.kyocera.com/news/2021/11/11084010.html.
[5] https://www.kyoceramobile.com/rugged-devices/durasport-5g.

22.     As another example and without limitation of the foregoing, and on information and belief, the PM7250B and PM7350C PMICs and the SM7450 AP are used in the DuraForce Pro 3 5G. On information and belief, Defendant began offering the DuraForce Pro 3 5G for sale in the United States in 2023[6] and has been, and is currently, selling, and supporting the use of, the DuraForce Pro 3 5G in the United States.[7]

23.     As another example and without limitation of the foregoing, and on information and belief, the PM7150L, PM7250, and PM7250B PMICs are used in the DuraForce Ultra 5G UW. On information and belief, Defendant began offering the DuraForce Ultra 5G UW for sale in the United States in 2021 and has been, and is currently, selling, and supporting the use of, the DuraForce Ultra 5G UW in the United States.[8]

24.     Defendant has infringed and is infringing the Asserted Patents by making, using, offering to sell, importing, and selling (directly or through intermediaries) at least the Accused Products in this Judicial District and elsewhere in the United States. Further, Defendant has indirectly infringed the Asserted Patents by, without ImberaTek's authorization, making, selling, and supporting the Accused Products knowing that the same will be imported into, sold, and used in the United States and cause direct infringement.

25.     As detailed below, each of the Asserted Patents is infringed by each Accused Product because each element of at least one claim of each Asserted Patents is literally present in each Accused Product. To the extent that any element is not literally present, each such element is present under the doctrine of equivalents because it performs substantially the same function in

---

[6]  https://www.kyoceramobile.com/news/kyocera-maximizes-business-mobile-productivity-with-ultra-rugged-duraforce-pro-3-smartphone.
[7] https://www.kyoceramobile.com/rugged-devices/duraforce-pro-3.
[8] https://www.kyoceramobile.com/rugged-devices/duraforce-ultra-5g.

substantially the same way to achieve substantially the same result, and any differences between the accused product and claim element are insubstantial.

>    **D.    The Negotiations Between the Parties and Defendant's Knowledge of the Asserted Patents**

26.    On information and belief, Defendant has had knowledge of the Asserted Patents since at least January 27, 2021 when ImberaTek sent a letter to Goro Yamaguchi[9] at Kyocera Corporation and Yasuhiro Oishi at Kyocera International, Inc. (i) asserting that Defendant was "likely utilizing and causing its customers and users to utilize," *inter alia*, the 527, 723, and 324 Patents and "should explore taking a license from ImberaTek to cover both its past and future utilization of" those patents, (ii) including an "exemplary listing of our patents" on an Exhibit A that included the 194 Patent, and (iii) stating that "ImberaTek expects that you may currently be using, or will in the future be using, additional patented inventions from this portfolio." (*See* Exhibit 6.) ImberaTek further informed Defendant that it "is willing to immediately negotiate a license under its patent portfolio" and "would like to explore an amicable business resolution . . . ." (*See id.*) On information and belief, ImberaTek did not receive a response from Defendant to its letter, so on August 28, 2024, ImberaTek sent a follow up email to Mitsufumi Yoshimoto (whom ImberaTek understood to be in the Corporate, Legal, and Intellectual Property Group of Kyocera Corporation) attaching the January 27, 2021 letter and stating that "it appears that Kyocera continues to use ImberaTek's patents in its cell phone products. By way of example, your cell phone products, including its PMICs, use and cause your customers to use," *inter alia*, the 527 Patent, the 723 Patent, and the 324 Patent. (*See* Exhibit 7.) Having not heard back, ImberaTek followed up with another email to Mitsufumi Yoshimoto on October 14, 2024, in which ImberaTek

---

[9] On information and belief, Mr. Yamaguchi was in 2021, and still is, the Chairman of Kyocera Corporation. *See* https://global.kyocera.com/company/directors.html.

asked if Kyocera intended to respond or "intend[ed] to continue its willful infringement of ImberaTek's patents without comment?" (*See id.*)

27.     On October 17, 2024, Kazuhiro Yamamoto, identified by his signature block as a member of Defendant Kyocera Corporation's Corporate Legal and Intellectual Property Group, responded, stating that "our consideration of cell phone products has just started" and "[w]e will contact you separately if we would like you to support us." (*See id.*) On October 22, 2024, ImberaTek responded to Mr. Yamamoto (copying Miyamoto Masaaki and Arisaka Akihiro of Kyocera), saying "[p]lease take notice that Kyocera also utilizes and causes its customers and users to utilize [the 194 Patent]. By way of non-limiting example, the processors in your cell phones use this patent. This is a further example of why Kyocera requires a license to ImberaTek's patent portfolio." (*See id.*) On information and belief, ImberaTek did not receive any further response from Defendant.

28.     Thus, over the course of five years, ImberaTek was met with ignored communications, delay, and prolonged periods for responses. Defendant did not substantively respond to ImberaTek's communications or licensing offers or provide a good faith counteroffer. Defendant instead engaged in holdout behavior, refusing to engage in good faith negotiations, all while knowingly and willfully continuing to infringe.

29.     In light of the foregoing, Defendant, on information and belief, by no later than January 27, 2021, was provided actual notice of infringement of each Asserted Patent, knew of each of the Asserted Patents, and knew or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the Asserted Patents. Additionally, Defendant, by no later than August 28, 2024, was provided actual notice of infringement of the 527, 723, and 324 Patents, knew of the 527, 723, and 324 Patents, and knew

or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the 527, 723, and 324 Patents. Additionally, Defendant, by no later than October 22, 2024, was provided actual notice of infringement of the 194 Patent, knew of the 194 Patent, and knew or should have known since that date that the manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed the 194 Patent. Additionally, Defendant has knowledge of the 324 and 194 Patents and its infringement thereof by the date on which this Complaint was filed.

        **E.**        **Claims for Patent Infringement**

30.      The allegations provided below are exemplary and without prejudice to ImberaTek's infringement contentions provided pursuant to the Court's scheduling order and local rules. In providing these allegations, ImberaTek does not provide or imply any particular claim construction or the precise scope of the claims. ImberaTek's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

31.      The below infringement allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. ImberaTek reserves the right to modify this description, including, for example, based on information that it obtains during discovery about the Accused Products and the Asserted Patents.

32.      To the extent any patentee's or licensee's product was sold in the United States that embodied an Asserted Patent and was not marked with that Patent, ImberaTek is, nevertheless, entitled to past damages for that Patent for any period in which any such unmarked products were not sold in the United States, and for the entire period after actual notice occurred as described *supra*.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,609,527**

33.     ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

34.     During the term of the 527 Patent, the 527 Patent was valid and enforceable, and Defendant, without ImberaTek's authority, made, used, offered to sell, sold, and imported into the United States the Accused Products, certain of which directly infringe one or more claims of the 527 Patent, literally or under the doctrine of equivalents.

35.     At least the DuraForce Ultra 5G UW, DuraSport 5G UW, and DuraForce Pro 3 5G, and any other of Defendant's products made, sold, or used in the United States, or imported into the United States during the term of the 527 Patent having the same or similar PMIC components (the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs) as the forgoing specifically identified product models (the "527 Accused Products"), include electronic components that infringe at least one claim of the 527 Patent. For example, claim 1 recites:

> An electronic module, comprising:
>
> a first conductive-pattern layer having a first surface,
>
> first solid contact bumps solderlessly made on the first surface of the first conductive-pattern layer and metallurgically and electrically connected thereto,
>
> a component having flat contact zones,
>
> second solid contact bumps solderlessly made on the flat contact zones and metallurgically and electrically connected thereto, and
>
> an insulating-material layer on the first surface of the first conductive
>
> pattern layer,
>
> wherein the component is embedded in the insulating-material layer and wherein the second solid contact bumps made on the flat contact zones of the component are metallurgically, electrically and solderlessly connected to the first solid contact bumps made on the first surface of the first conductive-pattern layer.

36.     The 527 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

37.     On information and belief, Defendant infringed, in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 527 Patent, including at least claim 1, by making, using, offering to sell, selling, and importing the 527 Accused Products without authority or license. The 527 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 527 Patent. In that regard, the exemplary claim charts attached as Exhibits 8-13 show how the 527 Accused Products include each element of claim 1 of the 527 Patent. Defendant has thereby directly infringed one or more claims of the 527 Patent.

38.     As shown in the charts, the 527 Accused Products include "[a]n electronic module, comprising: a first conductive-pattern layer having a first surface." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show a first conductive-pattern layer having a first surface, where a copper Energy Dispersive X-Ray ("EDX")[10] map shows the specified layer is conductive. (*See* Exhibits 8-13.)

39.     As also shown in the charts, the 527 Accused Products include "first solid contact bumps solderlessly made on the first surface of the first conductive-pattern layer and metallurgically and electrically connected thereto." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show the first solid contact bump is solderlessly made and metallurgically and electrically

---

[10] "EDX" and "EDS" are both abbreviations of the same term, "Energy Dispersive X-Ray Spectroscopy." These abbreviations may be used interchangeably.

connected to the first surface of the first conductive-pattern layer, as shown by the absence of tin around the first solid contact bump in a EDS Layered Image and/or Map Sum Spectrum and the presence of copper in a copper EDX map. (*See* Exhibits 8-13.)

40.    As further shown in the charts, the 527 Accused Products include "a component having flat contact zones." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show a component having flat contact zones. (*See* Exhibits 8-13.)

41.    As further shown in the chart, the 527 Accused Products include "second solid contact bumps solderlessly made on the flat contact zones and metallurgically and electrically connected thereto." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show the second solid contact bump is solderlessly made and metallurgically connected by way of plating, as shown by the absence of tin around the second solid contact bump in a EDS Layered Image and/or Map Sum Spectrum, and is electrically connected, to the flat contact zones. (*See* Exhibits 8-13.)

42.    As further shown in the chart, the 527 Accused Products include "an insulating-material layer on the first surface of the first conductive-pattern layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show an insulating material layer on the first surface of the first conductive-pattern layer, where the insulating material layer contains insulating, *i.e.*, non-conductive, materials (O, Si) as shown in the EDX maps. (*See* Exhibits 8-13.)

43.    As further shown in the chart, the 527 Accused Products include "wherein the component is embedded in the insulating-material layer and wherein the second solid contact bumps made on the flat contact zones of the component are metallurgically, electrically and

solderlessly connected to the first solid contact bumps made on the first surface of the first conductive-pattern layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 527 Accused Products show the component is embedded in the insulating-material layer and the second solid contact bumps and first solid contact bumps are metallurgically, electrically, and solderlessly connected as shown by the absence of tin around the first solid contact bump and the second solid contact bump in an EDS Layered Image and/or Map Sum Spectrum and the presence of copper in a copper EDX map. (*See* Exhibits 8-13.)

44.     By at least January 27, 2021, ImberaTek disclosed the existence of the 527 Patent to Defendant and informed Defendant that it was "likely utilizing and causing its customers and users to utilize" the 527 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent. On August 28, 2024, ImberaTek informed Defendant that "it appears that Kyocera continues to use ImberaTek's patents in its cell phone products. By way of example, your cell phone products, including its PMICs, use and cause your customers to use," *inter alia*, the 527 Patent, and on October 14, 2024, ImberaTek asked Defendant if it "intend[ed] to continue its willful infringement of ImberaTek's patents without comment." Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 527 Patent and that its activities infringe the 527 Patent since at least January 27, 2021 and no later than August 28, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021, and no later than August 28, 2024, that its customers, distributors, and other purchasers of the 527 Accused Products infringed the 527 Patent at least because Defendant had knowledge of its infringement of the 527 Patent.

45.     Defendant's acts of infringement of the 527 Patent have been committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 527 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

46.     On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 527 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 527 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 527 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (*see* https://www.kyoceramobile.com/available-devices), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 527 Accused Products or products containing infringing chips in the 527 Accused Products. Defendant also manufactured the 527 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 527 Patent and its infringement since at least at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

47.    On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed one or more claims of the 527 Patent by offering to sell, selling, and/or importing into the United States material components of the 527 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 527 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 527 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 1 of the 527 Patent for the reasons set forth above.

48.    The infringing semiconductor chips of the 527 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

49.    ImberaTek has suffered damages as a result of Defendant's infringement of the 527 Patent.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,222,723

50.    ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.    During the term of the 723 Patent, the 723 Patent was valid and enforceable, and Defendant, without ImberaTek's authority, made, used, offered to sell, sold, and imported into the United States at least the Accused Products, certain of which directly infringe one or more claims of the 723 Patent, literally or under the doctrine of equivalents.

52.    At least the DuraForce Ultra 5G UW, DuraSport 5G UW, and DuraForce Pro 3 5G, and any other of Defendant's products made, sold, or used in the United States, or imported into

the United States during the term of the 723 Patent having the same or similar PMIC components (the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs) as the forgoing specifically identified product models (the "723 Accused Products"), include electronic components that infringe at least one claim of the 723 Patent. For example, claim 1 recites:

> An electronic module, comprising:
>
> a conductive-pattern layer;
>
> an insulating-material layer supporting the conductive-pattern layer;
>
> at least one component inside the insulating-material layer, the at least one component comprising a first surface and contact zones on the first surface;
>
> a first hardened adhesive layer on the first surface of the at least one component;
>
> a second hardened adhesive layer in contact with the conductive-pattern layer and the first hardened adhesive layer;
>
> holes in the first and second hardened adhesive layer at the locations of the contact zones; and
>
> conductive material in the holes and in electrical connection with the contact zones of the component and the conductive-pattern layer, wherein the first hardened adhesive layer has a first composition and the second hardened adhesive layer has a second composition different from the first composition.

53.     The 723 Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

54.     On information and belief, Defendant infringed, in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 723 Patent, including at least claim 1, by making, using, offering to sell, selling, and importing the 723 Accused Products without authority or license. The 723 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 723 Patent. In that regard, the exemplary claim charts attached as Exhibits 14-19 show how the 723 Accused Products include

each element of claim 1 of the 723 Patent. Defendant thereby has directly infringed one or more claims of the 723 Patent.

55. As shown in the charts, the 723 Accused Products include "[a]n electronic module, comprising: a conductive-pattern layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show a conductive-pattern layer, where a copper EDX map shows the specified layer is conductive. (*See* Exhibits 14-19.)

56. As also shown in the charts, the 723 Accused Products include "an insulating-material layer supporting the conductive-pattern layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show an insulating-material layer supports the conductive-pattern layer and includes insulating (*i.e.*, non-conductive) polymer dielectrics containing oxygen and silicon, as detected in EDX scans. (*See* Exhibits 14-19.)

57. As further shown in the charts, the 723 Accused Products include "at least one component inside the insulating-material layer, the at least one component comprising a first surface and contact zones on the first surface." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show at least one component inside the insulating material layer, the at least one component including a first surface and contact zones on the first surface. (*See* Exhibits 14-19.)

58. As further shown in the charts, the 723 Accused Products include "a first hardened adhesive layer on the first surface of the at least one component." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723

Accused Products show a first hardened adhesive layer on the first surface of the at least one component. (*See* Exhibits 14-19.)

59.    As further shown in the charts, the 723 Accused Products include "a second hardened adhesive layer in contact with the conductive-pattern layer and the first hardened adhesive layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show a second hardened adhesive layer in contact with the conductive-pattern layer and the first hardened adhesive layer. (*See* Exhibits 14-19.)

60.    As further shown in the charts, the 723 Accused Products include "holes in the first and second hardened adhesive layer at the locations of the contact zones." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show holes in the first and second hardened adhesive layer at the locations of the contact zones. (*See* Exhibits 14-19.)

61.    As further shown in the charts, the 723 Accused Products include "conductive material in the holes and in electrical connection with the contact zones of the component and the conductive-pattern layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show conductive material in the holes and in electrical connection with the contact zones of the component and the conductive-pattern layer, where the electrical connection formed between the contact zone and the conductive-pattern layer is shown in a copper EDX map. (*See* Exhibits 14-19.)

62.    As further shown in the charts, the 723 Accused Products include "wherein the first hardened adhesive layer has a first composition and the second hardened adhesive layer has a second composition different from the first composition." For example, cross sections of the

PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 723 Accused Products show the first hardened adhesive layer has a first composition and the second hardened adhesive layer has a second composition different from the first composition, where compositions of the first hardened adhesive layer and the second hardened adhesive layer are different as can be seen by different textures in a Scanning Electron Microscope ("SEM") image. (*See* Exhibits 14-19.)

63.     By at least January 27, 2021, ImberaTek disclosed the existence of the 723 Patent to Defendant and informed Defendant that it was "likely utilizing and causing its customers and users to utilize" the 723 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent. On August 28, 2024, ImberaTek informed Defendant that "it appears that Kyocera continues to use ImberaTek's patents in its cell phone products. By way of example, your cell phone products, including its PMICs, use and cause your customers to use," *inter alia*, the 723 Patent, and on October 14, 2024, ImberaTek asked Defendant if it "intend[ed] to continue its willful infringement of ImberaTek's patents without comment." Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 723 Patent and that its activities infringe the 723 Patent since at least January 27, 2021 and no later than August 28, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than August 28, 2024 that its customers, distributors, and other purchasers of the 723 Accused Products infringed the 723 Patent at least because Defendant had knowledge of its infringement of the 723 Patent.

64.     Defendant's acts of infringement of the 723 Patent have been committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and

belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 723 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

65.    On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 723 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 723 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 723 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (*see* https://www.kyoceramobile.com/available-devices), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 723 Accused Products or products containing infringing chips in the 723 Accused Products. Defendant also manufactured the 723 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 723 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

66.    On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed one or more claims of the 723

Patent by offering to sell, selling, and/or importing into the United States material components of the 723 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 723 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 723 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 1 of the 723 Patent for the reasons set forth above.

67. The infringing semiconductor chips of the 723 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

68. ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 723 Patent.

69.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,107,324

70. ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71. Defendant, without ImberaTek's authority, has been making, using, offering to sell, selling, and importing, and continues to make, use, offer to sell, sell, and import, in the United States at least the Accused Products, certain of which directly infringe one or more claims of the 324 Patent, literally or under the doctrine of equivalents.

72. The claims of the 324 Patent are valid and enforceable.

73. At least the DuraForce Ultra 5G UW, DuraSport 5G UW, and DuraForce Pro 3 5G, and any other of Defendant's products made, sold, or used in the United States, or imported into

the United States during the term of the 324 Patent having the same or similar PMIC components

(the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs) as the forgoing

specifically identified product models (the "324 Accused Products"), infringe at least one claim of

the 324 Patent. For example, claim 17 recites:

> Circuit module, comprising
>
> a conductor layer comprising conductors, the conductors having a first surface and a second surface and at least two layers of metal between the first surface and the second surface;
>
> a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors;
>
> at least one second insulator layer on the first surface of the first insulator layer;
>
> at least one component inside the at least one second insulator layer, the at least one component comprising contact terminals containing at least one layer of metal;
>
> contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements comprising an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, a contact surface area ($A_{CONT\,1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal;
>
> at least one layer of metal in the contact terminals containing a first metal;
>
> at least one layer of metal in the conductors containing a second metal; and
>
> the intermediate layer containing a third metal.

74.     The Accused Products and Defendant's infringing activities violate one or more

subsections of 35 U.S.C. § 271.

75.     On information and belief, Defendant has infringed and continues to infringe in

violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims

of the 324 Patent, including at least claim 17, by making, using, offering to sell, selling, and

importing the Accused Products without authority or license. The 324 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 324 Patent. In that regard, the exemplary claim charts attached as Exhibits 20-25 show how the 324 Accused Products include each element of claim 17 of the 324 Patent. Defendants thereby have directly infringed one or more claims of the 324 Patent.

76.    As shown in the charts, the 324 Accused Products include a "[c]ircuit module, comprising: a conductor layer comprising conductors, the conductors having a first surface and a second surface and at least two layers of metal between the first surface and the second surface." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show a circuit module with a conductor layer including conductors having a first surface and a second surface and at least two layers of metal, *i.e.*, copper and titanium, between the first surface and the second surface. (*See* Exhibits 20-25.)

77.    As also shown in the charts, the 324 Accused Products include "a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show a first insulator layer having a first surface and a second surface, the second surface of the first insulator layer covering the first surface of the conductors. (*See* Exhibits 20-25.)

78.    As further shown in the charts, the 324 Accused Products include "at least one second insulator layer on the first surface of the first insulator layer." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show a circuit module with at least one second insulator layer on the first surface of the first insulator layer. (*See* Exhibits 20-25.)

79.      As further shown in the charts, the 324 Accused Products include "at least one component inside the at least one second insulator layer, the at least one component comprising contact terminals containing at least one layer of metal." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show at least one component inside the at least one second insulator layer, the at least one component including contact terminals containing at least one layer of metal. (*See* Exhibits 20-25.)

80.      As further shown in the charts, the 324 Accused Products include "contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements comprising an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, a contact surface area ($A_{CONT\ 1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show contact elements between at least some of the contact terminals and at least some of the conductors for forming electrical contacts, the contact elements including an intermediate layer on the surface of the contact terminal, the intermediate layer containing at least one layer of metal, *i.e.*, titanium, a contact surface area ($A_{CONT\ 1}$) between the intermediate layer and the contact terminal being less than a surface area ($A_{PAD}$) of the contact terminal. (*See* Exhibits 20-25.)

81.      As further shown in the charts, the 324 Accused Products include "at least one layer of metal in the contact terminals containing a first metal." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused

Products show at least one layer of metal in the contact terminals containing a first metal, *i.e.*, aluminum. (*See* Exhibits 20-25.)

82.    As further shown in the charts, the 324 Accused Products include "at least one layer of metal in the conductors containing a second metal." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show at least one layer of metal in the conductors containing a second metal, *i.e.*, copper or titanium. (*See* Exhibits 20-25.)

83.    As further shown in the charts, the 324 Accused Products include "the intermediate layer containing a third metal." For example, cross sections of the PM6150L, PM7150L, PM7250, PM7250B, PM6350, and PM7350C PMICs from the 324 Accused Products show the intermediate layer containing a third metal, *i.e.*, titanium. (*See* Exhibits 20-25.)

84.    By at least January 27, 2021, ImberaTek disclosed the existence of the 324 Patent to Defendant and informed Defendant that it was "likely utilizing and causing its customers and users to utilize" the 324 Patent and "should explore taking a license from ImberaTek to cover both its past and future utilization of" that patent. On August 28, 2024, ImberaTek informed Defendant that "it appears that Kyocera continues to use ImberaTek's patents in its cell phone products. By way of example, your cell phone products, including its PMICs, use and cause your customers to use," *inter alia*, the 324 Patent, and on October 14, 2024, ImberaTek asked Defendant if it "intend[ed] to continue its willful infringement of ImberaTek's patents without comment." Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 324 Patent and that its activities infringe the 324 Patent since at least January 27, 2021 and no later than August 28, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least

January 27, 2021 and no later than August 28, 2024 that their customers, distributors, and other purchasers of the 324 Accused Products infringed the 324 Patent at least because Defendants had knowledge of their infringement of the 324 Patent.

85.     In addition and in the alternative, by at least the date on which this Complaint was filed, ImberaTek disclosed the existence of the 324 Patent to Defendants and identified at least some of Defendant's activities that infringe the 324 Patent. Thus, Defendant has had knowledge of the 324 Patent and that its activities infringe the 324 Patent since at least the date on which this Complaint was filed. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least the date on which this Complaint was filed that its customers, distributors, and other purchasers of the 324 Accused Products are infringing the 324 Patent at least because Defendant has known that it is infringing the 324 Patent.

86.     Defendant's acts of infringement of the 324 Patent have been committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively have believed that its actions do or did not constitute infringement of the 324 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

87.     On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 324 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 324 Accused Products in the

United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 324 Accused Products in marketing materials, technical specifications, data sheets, web pages on their website (*see* https://www.kyoceramobile.com/available-devices), press releases, and user manuals, as well as at trade shows and through their sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 324 Accused Products or products containing infringing chips in the 324 Accused Products. Defendant also manufactured the 324 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 324 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

88.    On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed and continues to contributorily infringe one or more claims of the 324 Patent by offering to sell, selling, and/or importing into the United States material components of the 324 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 324 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 324 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 17 of the 324 Patent for the reasons set forth above.

89.    The infringing semiconductor chips of the 324 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

90.     ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 324 Patent.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,487,194

91.     ImberaTek repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

92.     Defendant, without ImberaTek's authority, has been making, using, offering to sell, selling, and importing, and continues to make, use, offer to sell, sell, and import, in the United States at least the Accused Products, certain of which directly infringe one or more claims of the 194 Patent, literally or under the doctrine of equivalents.

93.     The claims of the 194 Patent are valid and enforceable.

94.     At least the DuraForce Ultra 5G UW, DuraSport 5G UW, and DuraForce Pro 3 5G, and any other of Defendant's products made, sold, or used in the United States, or imported into the United States during the term of the 194 Patent having the same or similar PMIC components (the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs) and AP components (the SM4350 and SM7450 APs) as the forgoing specifically identified product models (the "194 Accused Products"), infringe at least one claim of the 194 Patent. For example, claim 1 recites:

A circuit board, comprising:

a conductor-pattern layer;

an insulating-material layer supporting the conductor-pattern layer;

at least one component inside the insulating-material layer, the component having a plurality of contact areas;

a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component;

wherein the set of contact elements comprise a plurality of individual contact elements for at least one single contact area in said plurality of contact areas.

95.    The Accused Products and Defendant's infringing activities violate one or more subsections of 35 U.S.C. § 271.

96.    On information and belief, Defendant has infringed and continues to infringe in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, one or more claims of the 194 Patent, including at least claim 1, by making, using, offering to sell, selling, and importing the 194 Accused Products without authority or license. The 194 Accused Products, and/or Defendant's manufacturing thereof, satisfy each and every limitation of one or more claims of the 194 Patent. In that regard, the exemplary claim charts attached as Exhibits 26-33 show how the 194 Accused Products include each element of claim 1 of the 194 Patent. Defendants thereby have directly infringed one or more claims of the 194 Patent.

97.    As shown in the charts, the 194 Accused Products includes "[a] circuit board, comprising: a conductor-pattern layer." For example, cross sections of the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs and the SM4350 and SM7450 APs from the 194 Accused Products show a circuit board with a conductor-pattern layer. (*See* Exhibits 26-33.)

98.    As also shown in the charts, the 194 Accused Products include "an insulating-material layer supporting the conductor-pattern layer." For example, cross sections of the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs and the SM4350 and SM7450 APs from the 194 Accused Products show an insulating-material as seen in an EDX map illustrating the insulating-material layer including insulating materials such as oxygen and silicon. (*See* Exhibits 26-33.)

99.     As further shown in the charts, the 194 Accused Products include "at least one component inside the insulating-material layer, the component having a plurality of contact areas." For example, cross sections of the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs and the SM4350 and SM7450 APs from the 194 Accused Products show at least one component inside the insulating-material layer, the component having a plurality of contact areas. (*See* Exhibits 26-33.)

100.     As further shown in the charts, the 194 Accused Products include "a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component." For example, cross sections of the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs and the SM4350 and SM7450 APs from the 194 Accused Products show a set of contact elements between the conductor-pattern layer and contact areas for electrically connecting the conductor-pattern layer and the at least one component, as seen in an EDS copper layer image showing a copper conductor-pattern layer and copper contact elements.  (*See* Exhibits 26-33.)

101.     As further shown in the charts, the 194 Accused Products include "wherein the set of contact elements comprise a plurality of individual contact elements for at least one single contact area in said plurality of contact areas." For example, cross sections of the PM6150L, PM6350, PM7150L, PM7250, PM7250B, and PM7350C PMICs and the SM4350 and SM7450 APs from the 194 Accused Products show that the set of contact elements comprise a plurality of individual contact elements for at least one single contact area in the plurality of contact areas. (*See* Exhibits 26-33.)

102.     By at least January 27, 2021, ImberaTek disclosed the existence of the 194 Patent to Defendant in an "exemplary listing of our patents" and stated that "ImberaTek expects that you

may currently be using, or will in the future be using, additional patented inventions from this portfolio." (*See* Exhibit 6.) And by at least October 22, 2024, ImberaTek advised Defendant that it "utilizes and causes its customers and users to utilize [the 194 Patent]. By way of non-limiting example, the processors in your cell phones use this patent. This is a further example of why Kyocera requires a license to ImberaTek's patent portfolio." (*See* Exhibit 7.) Further, on information and belief, Defendant monitors ImberaTek's patent portfolio. Thus, on information and belief, Defendant has had knowledge of the 194 Patent and that its activities infringe the 194 Patent since at least January 27, 2021 and no later than October 22, 2024. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least January 27, 2021 and no later than October 22, 2024 that its customers, distributors, and other purchasers of the 194 Accused Products infringed the 194 Patent at least because Defendant had knowledge of its infringement of the 194 Patent.

103.    In addition and in the alternative, by at least the date on which this Complaint was filed, ImberaTek disclosed the existence of the 194 Patent to Defendant and identified at least some of Defendant's activities that infringe the 194 Patent. Thus, Defendant has had knowledge of the 194 Patent and that its activities infringe the 194 Patent since at least the date on which this Complaint was filed. Based on ImberaTek's disclosures, Defendant has also known or should have known since at least the date on which this Complaint was filed that its customers, distributors, and other purchasers of the 194 Accused Products are infringing the 194 Patent at least because Defendant has known that it is infringing the 194 Patent.

104.    Defendant's acts of infringement of the 194 Patent have been committed with full knowledge of ImberaTek's patent rights and full knowledge of infringement. On information and belief, and for at least the reasons discussed above, Defendant could not reasonably or subjectively

have believed that its actions do or did not constitute infringement of the 194 Patent, nor could it reasonably or subjectively have believed that the patent is invalid. Despite that knowledge and subjective belief, Defendant continued its infringing activities. Defendant's directly and indirectly infringing acts constitute willful, intentional, and deliberate infringement, entitling ImberaTek to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

105.    On information and belief, in violation of 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, Defendant has actively, knowingly, and intentionally induced infringement of one or more claims of the 194 Patent under 35 U.S.C. § 271(b) by actively encouraging others to import, make, use, sell, and/or offer to sell the 194 Accused Products in the United States with knowledge that those actions would constitute infringement. For example, on information and belief, Defendant has actively promoted the sale, use, and importation of the 194 Accused Products in marketing materials, technical specifications, data sheets, web pages on their website (*see* https://www.kyoceramobile.com/available-devices), press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the 194 Accused Products or products containing infringing chips in the 194 Accused Products. Defendant also manufactured the 194 Accused Products intending that they would be imported into, and sold and used in, the United States. As mentioned above, Defendant has had knowledge of the 194 Patent and its infringement since at least January 27, 2021, and either knew that the induced acts constituted patent infringement or, alternatively, was willfully blind to the infringement.

106.    On information and belief, in violation of 35 U.S.C. § 271(c), literally or under the doctrine of equivalents, Defendant has contributorily infringed and continues to contributorily infringe one or more claims of the 194 Patent by offering to sell, selling, and/or importing into the

United States material components of the 194 Accused Products that constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of the 194 Patent, and which are not a staple article or commodity of commerce suitable for substantial non-infringing use. For example, the 194 Accused Products include infringing processors, integrated circuits, and other semiconductor components that are a material part of at least the invention of claim 1 of the 194 Patent for the reasons set forth above.

107. The infringing semiconductor chips of the 194 Accused Products are not materially changed by subsequent processes and do not become trivial and nonessential components of another product.

108. ImberaTek has suffered and continues to suffer damages as a result of Defendant's infringement of the 194 Patent.

## PRAYER FOR RELIEF

WHEREFORE, ImberaTek respectfully requests the following relief:

(A) The entry of judgment in favor of ImberaTek, and against Defendant, that Defendant has infringed and continues to infringe one or more claims of the Asserted Patents;

(B) The entry of judgment in favor of ImberaTek, and against Defendant, that Defendant has willfully infringed one or more claims of the Asserted Patents;

(C) The entry of a judgment awarding ImberaTek all damages resulting from Defendant's infringement, including no less than a reasonable royalty, and that such amount be trebled based on Defendant's willful, intentional, and deliberate infringement pursuant to 35 U.S.C. § 284, including pre-judgment and post-judgment interest and without limitation under 35 U.S.C. § 287;

(D) The entry of a judgment awarding ImberaTek its attorneys' fees pursuant to 35 U.S.C. § 285;

(E) The entry of judgment in favor of ImberaTek, and against Defendant, that interest, costs, and expenses be awarded in favor of ImberaTek;

(F) An accounting and/or supplemental damages for all damages occurring after any discovery cutoff;

(G) A grant of preliminary and permanent injunctions enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with Defendant, from infringing, contributing to the infringement of, or inducing the infringement of the Asserted Patents that have not expired; and

(H) That this Court order such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, ImberaTek respectfully demands a trial by jury in this Action on all issues so triable.

Dated: July 2, 2026                    Respectfully submitted,


                                       /s/ Geoff Culbertson

                                       Peter J. McAndrews (*pro hac vice*)
                                       pmcandrews@mcandrews-ip.com
                                       Matthew G. McAndrews (*pro hac vice*)
                                       mmcandrews@mcandrews-ip.com
                                       David Z. Petty
                                       dpetty@mcandrews-ip.com
                                       Rajendra A. Chiplunkar
                                       rchiplunkar@mcandrews-ip.com
                                       McANDREWS, HELD & MALLOY, LTD.
                                       500 West Madison St., 34th Floor
                                       Chicago, IL 60661
                                       Telephone: (312) 775-8000
                                       Facsimile: (312) 775-8100

Geoff Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

*Attorneys for Plaintiff,*
ImberaTek, LLC